## DAVID W. EDELMAN *v.* PACIFIC EMPLOYERS INSURANCE COMPANY ET AL.
### (AC 18011)

Schaller, Hennessy and Sullivan, Js.

Argued January 20—officially released April 27, 1999

*Conrad Ost Seifert*, with whom, on the brief, was *John Blazi*, for the appellant (plaintiff).

*Michael J. Rose*, with whom were *Christopher M. Vossler* and, on the brief, *Philip T. Newbury, Jr.*, for the appellees (defendants).

*Opinion*

SCHALLER, J. This appeal arises from the trial court's order granting the motion for summary judgment filed by the defendant Pacific Employers Insurance Company, hereinafter referred to as the defendant, and the defendant Cigna Property and Casualty Companies[1] with respect to a controversy between the defendant and the plaintiff, David W. Edelman, regarding insurance coverage to be provided by the defendant under a policy that it issued. The trial court held that, under the terms of the general commercial liability policy, the defendant owed no duty to defend the underlying lawsuit brought by the plaintiff against the defendant's insured, Patrick R. Hibbits. On appeal, the plaintiff claims that the trial court improperly determined that Hibbits was not an insured under the policy.[2] We affirm the judgment of the trial court.

The following facts and procedural history provide the background necessary to the disposition of this appeal. Hibbits and his wife, Janice B. France, operated

---

[1] Pacific Employers Insurance Company is a subsidiary of Cigna Property and Casualty Companies.

[2] Because we find this issue dispositive, we need not reach the plaintiff's other claim that the trial court improperly determined that Hibbits' acts were intentional and not within the coverage of the policy. Nor do we find it necessary to address the defendant's claim that the trial court's order was proper for the alternate ground that Hibbits' acts were not "occurrences" and, thus, not within the coverage of the policy.

The Inn at Falls Village, Inc., and resided on the premises. On November 1, 1988, Hibbits became intoxicated on the inn's premises and assaulted his wife who subsequently called the state police. The plaintiff, a state trooper, was dispatched to aid another trooper in dealing with Hibbits. By the time the troopers arrived, Hibbits had gone to an upstairs room at the inn. As the troopers approached and told Hibbits that he was under arrest, Hibbits became combative, abusive and violent. Hibbits became increasingly combative as he was being taken to the police cruiser and began to assault the state troopers. Because he continued to be combative even after being placed in the cruiser, the plaintiff attempted to restrain Hibbits' legs, at which time Hibbits kicked the plaintiff twice in the head in rapid succession and with great force.

The plaintiff subsequently brought suit against the inn, Hibbits and Hibbits' wife in three counts. Count one of the complaint alleged that the inn negligently exposed a known alcoholic to alcohol who, in turn, injured the plaintiff. Count two alleged that Hibbits negligently assaulted the plaintiff. The final count alleged that Hibbits and his wife acted negligently in their corporate capacities as officers of the corporation by exposing a known alcoholic to alcohol who, in turn, injured the plaintiff.

Prior to the incident, the defendant had issued a commercial general liability policy to Hibbits and his wife in connection with their conducting the business of the inn. They each demanded a defense pursuant to the policy. The defendant declined to defend on the basis that the acts alleged in the complaint were not covered by the policy because the coverage of the policy was limited to the "conduct of the business" that the insured owned.[3] The defendant claimed that Hibbits' assault on

[3] The relevant section of the policy provides:
"SECTION II—WHO IS AN INSURED

the plaintiff was not part of Hibbits' conducting the business of the inn.

On August 25, 1993, Hibbits and the inn stipulated to a judgment in favor of the plaintiff in the amount of $150,000. As part of the stipulated judgment, Hibbits and the inn agreed to assign whatever rights they might have against the defendant to the plaintiff in exchange for the plaintiff's agreement not to enforce the stipulated judgment against Hibbits or the inn.

After the defendant failed to satisfy the judgment, the plaintiff brought the present action, pursuant to both General Statutes § 38a-321 and the common law, alleging breach of contract, bad faith, and violations of the Connecticut Unfair Insurance Practices Act, General Statutes § 38a-815 et seq., and the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The complaint asserted, inter alia, that the defendant breached its contract of insurance by failing to defend and indemnify Hibbits and the inn. After the pleadings were closed, the defendant moved for summary judgment on all counts of the complaint, claiming that it was not obligated to provide Hibbits or the inn with a defense in the underlying action nor was it obligated to indemnify Hibbits and the inn.

The trial court agreed with the defendant and concluded that (1) counts one and three of the underlying complaint were excluded from coverage under the liability policy's liquor exclusion, (2) the corporation was not an insured under the policy, (3) count two of the underlying complaint did not state a claim for business related conduct in that Hibbits' assault on the plaintiff was outside the scope of his business duties and (4) Hibbits' acts were excluded from coverage under the

---

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner."

liability policy's intentional acts exclusion. Because all of the counts of the complaint were derivative of the plaintiff's claim that the defendant breached its duty to defend and indemnify under the policy, the trial court rendered summary judgment in favor of the defendant.

In this appeal, the plaintiff argues that count two of the underlying complaint triggered coverage and the duty to defend and indemnify. Specifically, the plaintiff claims that summary judgment was improperly rendered because the trial court incorrectly determined that Hibbits was not an insured under the policy.[4] The plaintiff does not argue with the trial court's determination that Hibbits was not an insured under the basic policy because the assault on the plaintiff was outside the scope of Hibbits' business duties.[5] Rather, the plaintiff argues that Hibbits was an insured because an endorsement to the policy modified and expanded the policy's basic coverage to include conduct outside the scope of Hibbits' business duties.[6] The defendant contends, conversely, that count two of the underlying complaint did not trigger a duty to defend because the plaintiff's injuries did not arise out of the ownership, maintenance or use of the premises. Because we conclude that Hibbits was not an insured under the endorsement, the defendant was not obligated to provide a defense or indemnify Hibbits with respect to the allegations contained in count two of the underlying complaint.

---

[4] The defendant argues that the plaintiff failed to preserve this claim. Because this issue was presented to the trial court in the plaintiff's supplemental memorandum, we conclude that it was raised within the meaning of Practice Book § 60-5. Additionally, we conclude that an adequate appellate record exists to review this claim.

[5] See footnote 2.

[6] The endorsement provides in relevant part: "WHO IS INSURED (Section II) [see footnote 3] is amended to include as an insured [Patrick Hibbits and Janice B. France] but only with respect to liability arising out of the ownership, maintenance or *use* of that part of the premises leased to you . . . ." (Emphasis added.)

"[A]n insurer's duty to defend . . . is determined by reference to the allegations contained in the [injured party's] complaint. *Flint* v. *Universal Machine Co.*, [238 Conn. 637, 646, 679 A.2d 929 (1996)]. The duty to defend an insured arises if the complaint states a cause of action which appears on its face to be within the terms of the policy coverage. . . . *Hogle* v. *Hogle*, 167 Conn. 572, 576, 356 A.2d 172 (1975). Because [t]he duty to defend has a broader aspect than the duty to indemnify and does not depend on whether the injured party will prevail against the insured; *Missionaries of the Co. of Mary, Inc.* v. *Aetna Casualty & Surety Co.*, 155 Conn. 104, 110, 230 A.2d 21 (1967); [i]f an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the insured. . . . *West Haven* v. *Commercial Union Ins. Co.*, 894 F.2d 540, 544 (2d Cir. 1990), quoting *West Haven* v. *Liberty Mutual Ins. Co.*, 639 F. Sup. 1012, 1017 (D. Conn. 1986)." (Emphasis in original; internal quotation marks omitted.) *Imperial Casualty & Indemnity Co.* v. *State*, 246 Conn. 313, 323–24, 714 A.2d 1230 (1998).

In this case, whether the defendant had a duty to defend under the policy depends on whether the policy's use of the language "arising out of the . . . use of . . . the premises" was intended to include or exclude the factual allegations contained in the complaint. Therefore, we must examine the policy to determine whether coverage was provided for the plaintiff's injuries.

"Unlike certain other contracts . . . where . . . the intent of the parties and thus the meaning of the contract is a factual question subject to limited appellate review . . . construction of a contract of insurance presents a question of law . . . which this court reviews de novo." (Internal quotation marks omitted.) *Flint* v. *Universal Machine Co.*, supra, 238 Conn. 642. "An insurance policy is to be interpreted by the same

general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. *Schultz* v. *Hartford Fire Ins. Co.*, 213 Conn. 696, 702, 569 A.2d 1131 (1990). The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . *O'Brien* v. *United States Fidelity & Guaranty Co.*, 235 Conn. 837, 842, 669 A.2d 1221 (1996). It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy. *Flint* v. *Universal Machine Co.*, [supra, 643]. The policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. . . . *Hansen* v. *Ohio Casualty Ins. Co.*, 239 Conn. 537, 542–43, 687 A.2d 1262 (1996)." (Internal quotation marks omitted.) *Imperial Casualty & Indemnity Co.* v. *State*, supra, 246 Conn. 324–25.

The dispute concerning the applicability of the endorsement centers on the meaning of the word "use"; whether the plaintiff's injuries, caused by Hibbits' assault while resisting arrest, arose from Hibbits' "use" of the premises leased to him. The policy and its endorsement do not define the term in any meaningful way. Nor can we discern any contextual pattern in the employment of the term that sheds any particular light on whether the word "use" was intended to have a broad or narrow interpretation. *Aetna Life & Casualty Co.* v. *Bulaong*, 218 Conn. 51, 61, 588 A.2d 138 (1991). We do note, however, that the term is employed in the endorsement in such a way as to limit the endorsement's scope of coverage, which suggests the term was intended to have a narrowing or limiting meaning.

In Webster's Third New International Dictionary, one meaning of the word "use" is "the legal enjoyment of property that consists in its employment, occupation, exercise, or practice." Under that definition, the plaintiff's injuries did not arise from Hibbits' employment, occupation or exercise of the premises, but rather from his acts, resisting arrest and assaulting the plaintiff, while on the property. The plaintiff contends that "[Hibbits] used the premises to consume alcohol and got drunk. He carried out his purpose by means of the premises." In determining whether the injuries arose from the use of the premises, we do not, however, focus on Hibbits' act of consuming alcohol, but, rather, on the mechanism that directly caused the plaintiff's injuries, i.e., Hibbits' assault of the plaintiff while he resisted arrest.

Our Supreme Court has held that the definition of "use" is closely akin to that of care, custody and control. *Alderman* v. *Hanover Ins. Group*, 169 Conn. 603, 607, 363 A.2d 1102 (1975). Our Supreme Court in *Alderman* employed a widely recognized definition of the word "use" to determine that the plaintiff in that case had not used a certain piece of property for purposes of a policy's exclusions. The court found that an insured "uses" property only where he puts it to his own service or to the purpose for which it was ordinarily intended. Id.

In this case, we conclude that Hibbits' assault of the plaintiff while he resisted arrest was not an ordinarily intended use of that part of the inn's premises leased to him. Using one's property to resist arrest and to assault a state trooper is not an ordinarily intended use of a premises. Even the plaintiff recognized that Hibbits did not use the premises for the purpose for which it was ordinarily intended. In his reply brief, the plaintiff stated that "it is conceded that residents do not 'use' their homes to negligently assault state troopers."

Because we conclude that the plaintiff's injuries did not arise out of the ordinarily intended use of that part of the premises leased to Hibbits, Hibbits was not an insured under the liability policy's endorsement. Therefore, the defendant was not obligated to provide a defense or to indemnify Hibbits with respect to the allegations contained in count two of the underlying complaint. The trial court properly granted summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.