******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

APPENDIX

GENERAL INSURANCE COMPANY OF AMERICA
*v.* AGATHA OKEKE ET AL.*

Superior Court, Judicial District of Hartford

File No. CV-15-6060103-S

Memorandum filed October 3, 2016

*Proceedings*

Memorandum of decision on plaintiff's motion for summary judgment. *Motion granted.*

*Kerry R. Callahan* and *Christopher A. Klepps*, for the plaintiff.

*Andrew J. Cates*, for the named defendant et al.

*Brian V. Altieri*, for the defendant Teresa Craft.

*Opinion*

HUDDLESTON, J. The plaintiff, General Insurance Company of America (General Insurance), brought this declaratory judgment action to resolve the question of its duty to defend and to indemnify Agatha Okeke (Agatha) and her son, Michael Okeke (Michael), under a homeowner's policy issued to Agatha, with respect to separate civil actions brought against them by Teresa Craft. The underlying civil actions allege that on January 11, 2013, Michael, who was then fifteen years old, assaulted and stabbed Craft, severely injuring her.

As to both Michael and Agatha, General Insurance argues that (1) Michael's conduct was not accidental and therefore did not constitute an "occurrence" covered under the policy, and (2) the policy excludes coverage for "bodily injury" that arises out of physical abuse. As to Michael only, it further argues that the policy excludes coverage for injuries that are expected or intended by the insured or that result from a violation of criminal law by the insured. The Okeke defendants argue that the declaratory judgment action is moot as to Michael because General Insurance declined to defend him in the underlying civil action, which went to judgment upon default after Michael failed to appear. Michael and Agatha further argue that under the "four corners doctrine," the complaints against each of them contain allegations of negligence that constitute an "occurrence" under the policy. Agatha further argues that even if Michael is not covered under the policy, the claims against her sound in negligence and are covered. Finally, Craft argues that the claims against Agatha are covered because they sound in negligence and in parental vicarious liability under General Statutes § 52-572. Parental vicarious liability is covered by an endorsement to the policy.

For the reasons discussed below, the court concludes as follows. The declaratory judgment action is not moot as to Michael because the failure to defend is claimed as a basis for special defenses and a counterclaim against General Insurance. The motion for summary judgment is granted as to Michael because the alleged conduct does not constitute an "occurrence" under the policy and, even if it did, it is expressly excluded from coverage because the injury was intended or expected by Michael, resulted from a violation of criminal law, and arose from physical abuse. The motion is granted as to Agatha because even if the claims against her constitute an "occurrence," Craft's bodily injuries nevertheless arise from Michael's physical abuse of her, and such injuries are excluded from coverage under the policy.

## FACTS

The following facts are either alleged in the complaint, and for the purpose of this motion are uncontested, or shown upon the record of the court in this

case and in the underlying civil actions brought by Craft against Agatha and Michael.

The defendants, Agatha and her son Michael, lived at 10 Morton Lane in East Hartford, Connecticut, in January, 2013. Michael was fifteen years old then. He is now believed to live in Nigeria.

In January, 2013, defendant Craft lived at 2 Morton Lane in East Hartford. She subsequently moved to Guilford, Connecticut.

Agatha obtained a homeowner's insurance policy from General Insurance for the period from December 14, 2012 to December 14, 2013. On January 11, 2013, while the policy was in effect, Michael is alleged to have attacked, assaulted, and stabbed Craft at her residence at 2 Morton Lane in East Hartford. This attack is alleged to have violated General Statutes § 53a-59a, assault of an elderly person in the first degree, and General Statutes § 53a-182, disorderly conduct.

By a complaint dated December 31, 2014, returnable to court on February 3, 2015, Craft commenced an action against Michael, docketed as *Teresa Craft* v. *Michael Okeke*, Docket No. CV-15-6052308-S, in New Haven Superior Court. Her complaint, in four counts, alleged causes of action for intentional assault (count one); negligent assault (count two); negligent infliction of emotional distress (count three); and intentional infliction of emotional distress (count four). All four counts were predicated on the same conduct—that is, Michael's assault on Craft on January 11, 2013— although in the negligent assault count the conduct was characterized differently from the way it was characterized in the intentional assault count.

By a complaint dated December 31, 2014, returnable to court on February 3, 2015, Craft also commenced an action against Agatha, docketed as *Teresa Craft* v. *Agatha Okeke*, Docket No. CV-15-6052310-S, in New Haven Superior Court. Craft's action against Agatha alleges negligent supervision (count one), negligence (count two), and negligent infliction of emotional distress (count three). The essential allegations of liability in each of the counts are that Agatha knew or should have known that Michael was a danger to himself and others but negligently failed to supervise him and to prevent him from obtaining access to knives.

Agatha tendered the actions to General Insurance for defense and indemnification. General Insurance initially agreed to defend both actions subject to a full reservation of rights. Although counsel retained by General Insurance initially appeared in Craft's action against Michael, that counsel subsequently moved to withdraw, stating that the claims against Michael were excluded under the policy and that the appearance had been filed by mistake. Permission to withdraw was granted, and Michael was subsequently defaulted for

failure to appear. After a hearing in damages, Craft was awarded $407,113.03 in economic and noneconomic damages and costs against Michael. The action against Agatha remains pending in New Haven Superior Court and is scheduled for trial on November 7, 2016.

The policy is "occurrence" based. Pursuant to its terms, General Insurance is required to defend and indemnify the insureds for "damages because of *bodily injury or property damage* caused by an *occurrence* to which this coverage applies . . . ." (Emphasis added.) Under the terms of the policy, "*occurrence*" means "an accident, including exposure to conditions which result in: bodily injury . . . during the policy period . . . ." (Emphasis added.) Under the policy's terms, personal liability insurance does not apply to bodily injury "which is expected or intended by any *insured* or which is the foreseeable result of an act or omission intended by any *insured*." (Emphasis added.) Personal liability insurance also does not apply under the policy to bodily injury "which results from violation of criminal law committed by, or with the knowledge or consent of any *insured*." (Emphasis added.)

General Insurance seeks a declaration that it is not required to defend or indemnify Agatha and Michael under the terms of the policy. All persons with an interest in this action have been named as parties.

Craft has asserted two special defenses and a counterclaim. In her first special defense, she alleges that the policy exclusions do not apply to negligent actions. In her second special defense, she alleges that General Insurance failed to comply with its duty to defend Michael in the underlying action and therefore is now liable to her for the judgment she obtained in that action. In her counterclaim, she alleges that General Insurance is liable to her for the judgment rendered against Michael in the underlying action. Agatha and Michael have also asserted three special defenses. In the first special defense, they allege that the declaratory judgment action is nonjusticiable as to Michael because General Insurance unilaterally decided not to defend Michael in the underlying action. In the second special defense, they allege that General Insurance is equitably estopped from denying coverage to Michael because it failed to provide a defense for him in the underlying action. In the third special defense, they allege that General Insurance has failed to acknowledge an endorsement to the policy that amends certain provisions on which General Insurance relies.

## APPLICABLE LAW

A party seeking summary judgment bears the burden of showing the nonexistence of any genuine issue of material fact. *Romprey* v. *Safeco Ins. Co. of America*, 310 Conn. 304, 319–20, 77 A.3d 726 (2013). "To satisfy his burden the movant must make a showing that it is

quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." (Internal quotation marks omitted.) *Ferri* v. *Powell-Ferri*, 317 Conn. 223, 228, 116 A.3d 297 (2015). The evidence must be viewed in the light most favorable to the nonmovant. Id. "When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]." (Internal quotation marks omitted.) Id. When a party moves for summary judgment and there are no contradictory affidavits, the court properly decides the motion by looking to the sufficiency of the movant's affidavit and other proof. See *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania*, 231 Conn. 756, 795, 653 A.2d 122 (1995).

A declaratory judgment action is a suitable vehicle for testing the rights and liabilities under an insurance policy. *St. Paul Fire & Marine Ins. Co.* v. *Shernow*, 22 Conn. App. 377, 380, 577 A.2d 1093 (1990). A court may address the merits of a declaratory judgment action on a motion for summary judgment. *United Services Automobile Assn.* v. *Marburg*, 46 Conn. App. 99, 102 n.3, 698 A.2d 914 (1997).

Declaratory judgment actions are authorized by General Statutes § 52-29[1] and Practice Book § 17-55.[2] Our Supreme Court has recognized that our declaratory judgment statute provides "a statutory action as broad as it well could be made." (Internal quotation marks omitted.) *New London County Mutual Ins. Co.* v. *Nantes*, 303 Conn. 737, 748, 36 A.3d 224 (2012). "Indeed, our declaratory judgment statute is broader in scope than . . . the statutes in most, if not all, other jurisdictions . . . and [w]e have consistently construed our statutes and the rules under it in a liberal spirit, in the belief that they serve a sound social purpose." (Internal quotation marks omitted.) Id. Although the declaratory judgment procedure cannot be used to secure advice on the law, "it may be employed in a justiciable controversy where the interests are adverse, where there is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement, and where all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof." (Internal quotation marks omitted.) Id. "Justiciability requires (1) that there be an actual controversy between or among

the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) *Board of Education* v. *Naugatuck*, 257 Conn. 409, 416, 778 A.2d 862 (2001).

## ANALYSIS

### I

### Mootness

Michael claims that the declaratory judgment action is moot as to the duty to defend him because General Insurance unilaterally decided not to provide a defense to him and the action against him has now gone to judgment. The question of mootness affects the court's subject matter jurisdiction and must, therefore, be decided before the court can proceed to the merits. See id., 412.

As a general matter, "[i]f the insurer declines to provide its insured with a defense and is subsequently found to have breached its duty to do so, it bears the consequences of its decision . . . ." (Internal quotation marks omitted.) *State Farm Fire & Casualty Co*. v. *Tully*, 322 Conn. 566, 571 n.7, 142 A.3d 1079 (2016). That general principle is implicated in this action by the special defenses and counterclaim filed by the defendants. More specifically, in their second special defense, Agatha and Michael assert that the failure of General Insurance to provide a defense in the underlying action equitably estops General Insurance from denying indemnification. In addition, Craft has asserted a counterclaim seeking to hold General Insurance liable for the judgment she obtained against Michael. These defendants have expressly placed in issue, through the special defenses and counterclaim, the question of General Insurance's duty to defend Michael. Applying the justiciability standard set forth in *Board of Education* v. *Naugatuck*, supra, 257 Conn. 409, the court concludes that (1) there is an actual and continuing controversy between these parties about the duty to defend Michael, (2) their interests are plainly adverse, (3) the matter in question presents an issue of contract interpretation and is capable of being adjudicated by judicial power, and (4) the determination of the issue may result in practical relief to General Insurance because, if it had no duty to defend Michael, the defense of estoppel will not apply and it will not be required to indemnify the judgment Craft obtained in the underlying action against Michael. The question of General Insurance's duty to defend Michael is therefore not moot.

### II

### Duty to Defend and Indemnify Michael

General Insurance argues that it had no duty to defend or indemnify Michael for several reasons: (1) his alleged conduct was intentional and therefore not an "occurrence" that is covered by the policy; (2) the policy excludes coverage for bodily injury that is "intended or expected" by the insured; (3) the policy excludes coverage for bodily injury that results from a violation of criminal law; and (4) the policy excludes coverage for bodily injury arising from "physical abuse." The defendants argue that Craft asserts negligence claims against Michael that trigger a duty to defend under the "four corners" rule. The court concludes that under the clear and unambiguous terms of the policy, General Insurance owes no duty to defend or indemnify Michael.

The principles governing the determination of this issue are well settled. "[A]n insurer's duty to defend, being much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the [underlying] complaint. . . . The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability. . . . It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint. . . . Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer must defend." (Internal quotation marks omitted.) *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 398, 757 A.2d 1074 (2000). Indeed, "[i]f an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured." (Internal quotation marks omitted.) Id., 399. "On the other hand, if the complaint alleges a liability which the policy does not cover, the insurer is not required to defend." (Internal quotation marks omitted.) Id.

Where a policy excludes coverage for damages resulting from intentional acts, the court examines the factual allegations to determine whether intentional acts and intended results are present. *State Farm Fire & Casualty Co.* v. *Tully*, supra, 322 Conn. 574. Moreover, "Connecticut courts have long eschewed the notion that pleadings should be read in a hypertechnical manner. . . . They thus read the complaint in a manner that advances substantial justice, construing it reasonably to contain all that it may fairly mean." (Internal quotation marks omitted.) Id., 574–75. The result is that even when an action is pleaded as an unintentional tort, such as negligence, "the court examines the alleged activities in the complaint to determine whether the insured

intended to commit both the acts and the injuries that resulted. If so, regardless of the title of the action, the court holds the action to be outside the coverage of the policy." (Internal quotation marks omitted.) Id., 575. "Furthermore, harmful intent may be inferred at law in circumstances where the alleged behavior in the underlying action is so inherently harmful that the resulting damage is unarguably foreseeable." (Internal quotation marks omitted.) Id. "Case law is clear that where the provisions in the insurance policy expressly exempt intentional acts of an insured from coverage, the court will grant summary judgment in favor of the insurer who relies upon such exception." (Internal quotation marks omitted.) Id. "When an insurer relies on an exclusionary clause to deny coverage, the initial burden is on the insurer to demonstrate that all the allegations within the complaint fall completely within the exclusion." Id. "If the complaint alleges liability that falls completely within the exclusion, the insurer is not required to defend." Id.

Finally, the Supreme Court has recently observed that where an insurer denies coverage on the ground that a complaint fails to allege an "occurrence," defined under a policy as an "accident," and whether the alleged act falls within an intentional act exclusion, "the ultimate inquiry—whether the act was intentional—is the same." Id., 571 n.8. If the court concludes that the alleged conduct falls within the intentional act exclusion, it need not consider whether it is also an "occurrence."

The underlying action against Michael included two counts that expressly alleged intentional acts—intentional assault in count one and intentional infliction of emotional distress in count four—and purported to allege "negligent assault" in count two and negligent infliction of emotional distress in count three. Although captioned "negligent assault," count two in Craft's complaint against Michael alleged that the "occurrence" was due to Michael's "negligence and carelessness" in that "he violently struck the plaintiff about the head, shoulder and torso, causing serious injury to the plaintiff, when he knew or should have known that this conduct was likely to inflict injury . . . ." Calling such conduct "negligence" does not make it negligent. Similarly, count three, which alleges negligent infliction of emotional distress, incorporates the following allegations from count one: "At that time and place, the minor defendant stabbed, assaulted, and beat the plaintiff," and "[t]he assault, stabbing, and beating by Michael Okeke was willful, wanton, and malicious." These allegations are plainly inconsistent with a negligence claim. They plainly describe intentional conduct. Such intentional and violent conduct is expressly excluded from coverage under "Liability Losses We Do Not Cover," which provides in relevant part as follows: "1. Coverage E—Personal Liability, and Coverage F—Medical Pay-

ments to Others do not apply to *bodily injury* . . . a. which is expected or intended by any insured or which is the foreseeable result of an act or omission intended by the insured . . . [and] b. which results from violation of criminal law committed by . . . any insured." (Emphasis added.) Because bodily injury to Craft was the highly foreseeable result of Michael's alleged actions in violently stabbing and beating her about the head, shoulder, and torso, it is expressly excluded from coverage under the policy. General Insurance owed no duty to defend Michael because his conduct was not an "occurrence" (defined as an accident) covered by the policy, but an intentional act, and a violation of criminal law, that was expressly excluded from coverage.

A further provision of the policy excludes coverage for bodily injury "arising out of physical or mental abuse, sexual molestation or sexual harassment." See "Liability Losses We Do Not Cover," provision 1k. The defendants argue that the term "physical abuse" is not defined in the policy and is therefore ambiguous. That argument has been expressly rejected by the Appellate Court in *Merrimack Mutual Fire Ins. Co.* v. *Ramsey*, 117 Conn. App. 769, 982 A.2d 195, cert. denied, 294 Conn. 920, 984 A.2d 67 (2009). In that case, the insured allegedly stabbed the defendant, with whom he was involved in a romantic relationship, twenty-four times. In the declaratory judgment action brought by the insurer to determine whether it had a duty to defend or indemnify its insured, the defendant (the injured party) argued that exclusion 1k, which excluded coverage for bodily injuries arising out of "physical or mental abuse," contained an implicit intentionality requirement. The trial court, and subsequently the Appellate Court, disagreed. "The exclusion expressly exempts coverage for bodily injury arising out of physical abuse. Nowhere does it provide that a consideration of the abuser's intent is required. In fact, the policy contains a separate exclusion that applies specifically to intentional acts. . . . When both exclusions are read together, it is clear that exclusion 1k does not require a consideration of the insured's intent. . . . The only plausible interpretation of the . . . insurance policy is the natural and ordinary one accorded to it by the court . . . . The stabbing of the defendant clearly constituted physical abuse within the language of the policy. As such, the injuries suffered by the defendant are not covered, and the plaintiff has no duty to defend or indemnify [its insured]." Id., 772–73. The same conclusion is compelled here. The violent stabbing and beating of Craft cannot plausibly be considered anything other than "physical abuse." As such, the injuries suffered by Craft are not covered, and the plaintiff has no duty to defend or indemnify Michael.[3]

III

### Duty to Defend and Indemnify Agatha

General Insurance argues that it owes no duty to defend or indemnify Agatha because the claim arises from an intentional act that does not constitute an "occurrence" under the policy. It acknowledges that coverage is not excluded for Agatha under the intentional acts exclusion because an endorsement expressly provides that the intentional act exclusion will not apply to an insured "not participating in the intentional loss." It argues, however, that the exclusion for "physical abuse" does apply to Agatha because that exclusion, unlike the intentional conduct exclusion, does not make the exclusion inapplicable to insureds who did not participate in the abuse. Because the court agrees with General Insurance as to the "physical abuse" exclusion, it need not consider whether Agatha's own alleged negligence constitutes an "occurrence" under the policy.

As another Connecticut trial court has concluded, the "physical abuse" exclusion negates an insurer's duty to defend parents who are alleged to be liable on the basis of physical abuse inflicted by their minor child. See *Covenant Ins. Co.* v. *Sloat*, Superior Court, judicial district of Fairfield, Docket No. 385786 (May 23, 2003) (*Levin, J.*) (34 Conn. L. Rptr. 687) (considering whether statutory vicarious parental liability claim was barred by an exclusion for injuries arising out of "physical and mental abuse"). As the court observed in *Sloat*, "[u]nlike exclusion 'a,' which focuses on the intent of the insured, exclusion 'k' precludes coverage for an entire class of risks arising out of specified conduct, and does not turn on the intent of the insured." Id., 694. Relying on *LaBonte* v. *Federal Mutual Ins. Co.*, 159 Conn. 252, 259, 268 A.2d 663 (1970), the court in *Sloat* concluded that "in determining whether the complaint alleges a claim for bodily injury arising out of excluded activity, the court must inquire not merely into the status of the parents as parents but into the underlying conduct of their son—'the subject matter of the [incident] without regard to the involvement of the insured' parents." *Covenant Ins. Co.* v. *Sloat*, supra, 694. Here, the subject matter of the incident is Michael's physical abuse of Craft. Because all of the claims against Agatha "arise out of"[4] such physical abuse, they are expressly excluded from coverage. Consequently, General Insurance owes no duty to defend or indemnify Agatha.

### CONCLUSION

General Insurance has met its burden of showing that it had no duty to defend, and has no duty to indemnify, Michael Okeke. The acts in which Michael engaged were intentional and therefore (1) did not constitute an "occurrence" under the policy, and (2) were excluded because the bodily injuries that resulted were intended or expected within the meaning of exclusion 1a and were caused by a violation of criminal law. In addition,

the bodily injuries resulting from Michael's conduct unquestionably arose out of his physical abuse of Craft, and coverage is therefore excluded under exclusion 1k, the physical abuse exclusion.

Similarly, General Insurance met its burden of showing that it has no duty to defend or indemnify Agatha because the bodily injury at issue in the claims against her arose out of Michael's physical abuse of Craft and are excluded under exclusion 1k, the physical abuse exclusion.

For the reasons stated above, General Insurance's motion for summary judgment is granted.

\* Affirmed. *General Ins. Co. of America* v. *Okeke*, 182 Conn. App. 83,     A.3d     (2018).

[1] General Statutes § 52-29 (a) provides: "The Superior Court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment."

[2] Practice Book § 17-55 provides: "A declaratory judgment action may be maintained if all of the following conditions have been met:

"(1) The party seeking the declaratory judgment has an interest, legal or equitable, by reason of danger of loss or of uncertainty as to the party's rights or other jural relations;

"(2) There is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties; and

"(3) In the event that there is another form of proceeding that can provide the party seeking the declaratory judgment immediate redress, the court is of the opinion that such party should be allowed to proceed with the claim for declaratory judgment despite the existence of such alternate procedure."

[3] Because the duty to defend is significantly broader than the duty to indemnify, "where there is no duty to defend, there is no duty to indemnify . . . ." *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, 256 Conn. 343, 382, 773 A.2d 906 (2001).

[4] To "arise out of" or "arise from" a particular event, injuries must be shown only to have some logical causal relationship to the event. For instance, in *Hogle* v. *Hogle*, 167 Conn. 572, 356 A.2d 172 (1975), which concerned a policy that excluded liability for injuries arising out of the use of an automobile, the Supreme Court stated that "it is generally understood that for liability for an accident or an injury to be said to 'arise out of' the 'use' of an automobile for the purpose of determining coverage under the appropriate provisions of a liability insurance policy, it is sufficient to show only that the accident or injury 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to' the use of the automobile . . . ." Id., 577.

---